Good morning, Your Honor. Gerald Newton on behalf of Appellant Alan Finster is with me at the counsel table on this case. Good morning. This case presents a question of when 12 people in a jury box are not a jury and what it takes to convict a defendant beyond a reasonable doubt in a trial. Apprendi teaches us that there are two important things in a criminal trial. Those two important things are what's the burden of proof and who are the trier of fact. In this case, the burden of proof was shifted to Appellant Gana by the jury instructions that were given and the trier of fact turned out to be the California Court of Appeal, not the jury. Appellant Gana's defense in this case was unconsciousness, which is recognized by Penal Code Section 26 in California. There's a complete defense to all criminal charges in California. At no time was the jury ever told that being unconscious was a defense to these charges. Counsel, did the trial court allow into evidence testimony regarding the fact that the defendant took the medications and other testimony dealing with her unconsciousness? Yes, they did allow that testimony, but the trial court restricted that testimony to two other defenses, to the defense of hallucination and to the defense of voluntary intoxication. The jury was told in the jury instructions that they could only consider the evidence regarding mental state with regard to those two defenses. The jury was never told that they can consider that testimony with regard to whether or not there was intent to kill, which if you are unconscious, you have obviously no intent and that you have no intent to kill. This error was compounded by the fact that during jury argument, the prosecutor told the jury multiple times that the evidence that you have heard regarding Ms. Gana's mental state is not to be considered with regard to intent to kill. Further, they were told that they had to make an affirmative finding before they gave any weight to that testimony, and that is directly contrary to the law with regard to consciousness and unconsciousness. At no time did the jury learn that a person can still have movement and still talk and be unconscious. For instance, if a person sleepwalks, they're unconscious, but they move, and many people talk in their sleep. But the defense could have introduced evidence to that effect, is that right? The defense introduced some evidence to that, correct, but the jury was never told that they could consider it unconsciousness or unconsciousness. What did the jury told to consider all of the evidence in the case, though? Well, the jury was told to consider all of the evidence, but that conflicted with the jury instruction that were given with regard to the evidence on the medication. The evidence on the medication said you can only, if you find, based on this evidence, that she was either intoxicated or hallucinating, then you can consider it as you may. It seems to me that it's clear that the jury understood that only if they made that finding could they consider that evidence for anything in the case. And therefore, the jury never, ever considered that evidence, certainly not for intent to kill, and they certainly never, ever considered anything with regard to conscious or unconscious. Well, since you introduced evidence that a person could be unconscious yet appear to be conscious, is it conceivable or is it possible that the jury considered the evidence but rejected it? No, because there was no specific testimony with regard to the fact that you can move and still be unconscious. That is a legal instruction with regard to the law in California. I recall no direct testimony that told the jury that specific fact. It was obvious from the testimony that Ms. Ghana was moving and that she did make actions, whether or not they were voluntary in a legal sense is another question. So the thing that is complicated, it's absolutely clear that the jury wasn't instructed on consciousness or consciousness, and it's absolutely clear that the normal perception of a juror would be that if you're moving, you must be conscious. And in fact, the prosecutor argued to the judge that you couldn't give the instruction because there was evidence that she was moving, so it's very difficult to accept any statement that the jury would be more enlightened with regard to what's conscious and unconscious than the prosecutor in this case. And the prosecutor argued to the jury that none of that evidence that you heard is a defense to the crime, when in fact all of the evidence that the jury heard was a complete defense to the crime of murder. Well, I don't think it's a bad argument. I think you've got quite a decent argument. What makes it tough is that we're not on de novo review, are we? Well, you're on de novo review from the decision denying the petition for rid of habeas corpus. But we've got to apply the AEDPA deference. Correct. You have to find that this had a substantial and injurious effect on the outcome of the trial. I don't know how this cannot have a substantial and injurious effect on the outcome of the trial when the entire case was tried on her having the mental problems based upon the medication and essentially being unconscious, and the jury was never, ever told to decide it, and there was no jury instruction that specifically told them they had to consider all the evidence that was given, whether or not they made a finding of it in favor of the defendant on the issue of reasonable doubt. You're going on the unreasonable application of clearly established law, Prong? Yes. Okay. I have, if I can, if there's no further questions, I'd like to reserve the rest for rebuttal. If there's questions, I'm happy to answer them now. Give me one moment to see if Judge Gould has any questions before you sit down. Thank you. No questions here. Thank you. Thank you, Your Honor. Good morning, Your Honors. Christopher Beasley, Deputy Attorney General, on behalf of the Respondent. Under the Section 2254, EDPA, as you mentioned a few minutes ago, Judge Winn, the question here is whether the Court of Appeals' decision in applying the Chapman Standards to the error that happened here, whether that was unreasonable or whether it amounted to an unreasonable application of the Chapman Standard as outlined by the United States Supreme Court. Here, the Court of Appeal went through very thoroughly what happened in this trial. And while, yes, there was, and we agree that there was a mistake that was made, the unconsciousness instruction should have been given, that error was harmless, beyond a reasonable doubt. Judge Marbley, you mentioned or asked a couple of minutes ago whether it's conceivable that the jury, which received all of this evidence about mental state and about the drugs that she had been taking for chemotherapy and the Ambien that she was on and the depression that she was experiencing because of the failing of the family business and all of those various factors, whether it's conceivable that the jury may have just rejected that defense entirely, that evidence. The answer is yes. We know that because the jury was instructed by the court on hallucination and on mental defect and was explicitly told by the trial court that you can use this evidence to mitigate the crimes. You can use this to find that there was not a specific intent to kill. You can use the hallucination evidence to determine whether there was premeditation, deliberation, and willfulness as to the first-degree murder. This is a jury that received those instructions and yet nonetheless returned a verdict of first-degree murder with premeditation, deliberation, and willfulness, in addition to finding the lying-in-wait special circumstance that this was a person who waited for the opportune moment to strike and made a true finding as to that special circumstance. Given those instructions that the jury was given, that it could use that mental health evidence for those purposes and rejected it wholesale suggests, doesn't suggest, it establishes that the failure to give the unconsciousness instruction in this case was harmless beyond a reasonable doubt. Beyond that, this is a jury that is also informed and instructed by the trial court on all of the elements, the mental state elements for these various crimes and findings that it had to make. The jury was instructed that what malice is, malice is an element for murder. Express malice is an intent to kill. Implied malice is a conscious disregard for that the action is harmful to human life or dangerous to human life. So the malice instruction itself already contains within it a consciousness kind of element that the jury has to find beyond a reasonable doubt. Premeditation, deliberation, willfulness, those are states of mind that the jury had to affirmatively find beyond a reasonable doubt in order to convict Ms. Ghana of first-degree premeditated murder. So the jury had to make decisions as to her consciousness based on instructions that were given and ultimately made a finding that this was first-degree premeditated deliberate murder and rejected any idea or any notion that the defense evidence created that maybe there was mitigation of the mental state in this case. The state court of appeals decision was reasonable in its application of the Chapman Standard of Review and we ask this court to affirm the district court's denial of the writ of habeas corpus. If there are no questions by this court, the respondent would submit. Judge Gould? No questions, thank you. Thank you, your honors. All right, thank you. I beg to differ with the statement of counsel that the court of appeal resolved this under the Chapman harmless, the constitutional test under harmless beyond a reasonable doubt. The court of appeal decided this under California's harmless error test, which was people versus Watson. The court of appeal, in its opinion, does not specifically mention the test, but it is quite clear from reading the dissent where they only talk about this case should have been reversed on the more favorable to the prosecution standard of Watson. So the California court of appeal never ever considered whether or not this evidence or the jury instruction was harmless beyond a reasonable doubt. With regard to the argument that the jury was given other instructions that could let them resolve this question beyond a reasonable doubt, I point to two cases that were mentioned in the supplemental filing. One is Francis versus Franklin and the other is Sandstrom versus Montana. And both of those cases reject the argument that general instructions on reasonable doubt, presumption of interest, and things like that can negate the harm of the instructions that were erroneously given. In this case, the instructions that were given on mental state to the jury was, if you find that she was voluntarily intoxicated, or if you find that she was hallucinating, you may then, parenthesis, and only then consider that evidence for any purpose that you want. The instruction that the jury never heard was, if you have a reasonable doubt that she was conscious, the burden on the prosecution instead of the defense, you must find the defendant not guilty. It didn't give the jury discretion to do what it wanted. There is no reasonable way that a jury could understand from the instructions that were given that if they had a reasonable doubt about whether or not she was conscious, they had to find her not guilty. In effect, this trial was a slow plea of guilty for Ms. Ghana. Ms. Ghana testified in her own defense. The testimony that she gave and all the testimony that was presented under the instructions given said, convict her of murder. That is not a trial in America, I hope, and I hope that it never becomes a trial in America. It is in violation of long-established rules on who bears the burden of proof and what that burden of proof is. If the court has questions, I would be pleased to try to answer them. I have no questions. Judge Gould? I have no questions. Thank you very much, counsel. To both sides of your argument in this case, the matter is submitted for decision.
judges: Gould, Nguyen, Marbley